**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION – CINCINNATI**

| | | |
|---|---|---|
| JAMES B. HELMER, JR., | : | Case No. 1:20-cv-105 |
| | : | |
| Plaintiff, | : | Judge Matthew W. McFarland |
| | : | |
| v. | : | |
| | : | |
| BEASLEY, ALLEN, CROW, METHVIN, | : | |
| PORTIS & MILES, P.C., *et al.*, | : | |
| | : | |
| Defendants. | : | |

---

**ORDER DENYING MOTION TO DISMISS (Doc. 7)**

---

This case is before the Court on the Motion to Dismiss for Lack of Jurisdiction and Improper Venue (Doc. 7) filed by Defendant Beasley Allen, Crow, Methvin, Portis & Miles, P.C. ("Beasley Allen") and Defendant C. Lance Gould ("Gould") (collectively "Defendants"). Plaintiff James B. Helmer, Jr. ("Helmer") filed a Response in Opposition (Doc. 11), to which Defendants filed a Reply (Doc. 13), making this matter ripe for review.

**FACTS**

James B. Helmer, Jr., is an Ohio attorney and author of FALSE CLAIMS ACT: WHISTLEBLOWER LITIGATION ("Helmer Treatise"), a treatise on the False Claims Act, published in 1994. Helmer resides in Cincinnati, Ohio. Defendant Beasley Allen is a law firm located in Montgomery, Alabama, and Atlanta, Georgia. Defendant Gould, an attorney and principal at Beasley Allen, resides in Montgomery, Alabama. Defendants

advertise that they specialize in False Claims Act litigation.  In 2016, Defendants published a book titled *WHISTLEBLOWER: A BRIEF HISTORY/GUIDE TO GETTING STARTED* ("Beasley Book").  Gould is listed as the Author of the Beasley Book and Beasley Allen holds the copyright.

In 2019, Plaintiff became aware of the Beasley Book and, upon reading it, found that entire sentences were taken—verbatim—from the Helmer Treatise.  The Beasley Book is also organized similarly to the Helmer Treatise, albeit significantly shorter. Defendants began distributing the Beasley Book in 2016, providing it for free to attorneys and selling it to others; they have distributed several hundred copies to date. Defendants sent brochures to Ohio residents advertising the book, distributed at least 78 hard copies to Ohio residents, and have allowed at least 21 Ohio residents to download the electronic version from their websites.  One of these websites has a page titled "Ohio Whistleblower News," an interactive page that allows users to contact the law firm to seek legal consultation about potential FCA claims that arise in Ohio.[1]

Under 17 U.S.C. § 106, Plaintiff has exclusive rights of the Helmer Treatise to (1) reproduce the copyrighted work in copies; (2) prepare derivative works based upon the copyrighted work; and (3) distribute copies of the copyrights work to the public. Plaintiff contends that Defendants have infringed and continue to infringe his copyright of the Helmer Treatise with their work, the Beasley Book, in violation of 17 U.S.C. § 106.

---

[1] Ohio Whistleblower News, http://www.whistleblower-claim.com/states/Ohio/.

## LAW

When a defendant moves to dismiss a case pursuant to Fed. R. Civ. P 12(b)(2), and the district court rules on the motion without an evidentiary hearing, the plaintiff need only make a prima facie case of jurisdiction. *Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). To do so, plaintiff must set forth specific facts that support a finding of jurisdiction, and the plaintiff must make this demonstration by a preponderance of the evidence. *Id*. The Sixth Circuit has characterized this burden as "relatively slight." *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir.1988).

In determining whether plaintiff has met its burden, the district court considers the pleadings and affidavits "in a light most favorable to the plaintiff" and does not weigh "the controverting assertions of the party seeking dismissal." *MAG IAS Holdings, Inc. v. Schmuckle*, 854 F.3d 894, 899 (6th Cir. 2017) (*quoting Theunissen v. Matthews*, 935 F.2d 1454, 1459 (6th Cir. 1991)). This rule "prevent[s] non-resident defendants from regularly avoiding personal jurisdiction simply by filing an affidavit denying all jurisdictional facts." *Theunissen*, 935 F.2d at 1459. However, courts "may consider the defendant's undisputed factual assertions." *Conn*, 667 F.3d at 711.

## ANALYSIS

### I. Personal Jurisdiction

The Court may only exercise personal jurisdiction over non-resident defendants if (1) Ohio's long-arm statute allows for it and (2) the exercise of personal jurisdiction comports with due process. *See Conn v. Zakharov*, 667 F.3d 705, 711 (6th Cir. 2012). Plaintiff and Defendants agree that the Court does not have general personal

3

jurisdiction over Defendants but disagree on whether Defendants are subject to specific

personal jurisdiction. Defendants contend that (1) Ohio's long-arm statute does not

cover this claim and (2) the claim has no connection to any action they took in Ohio.

### A. Ohio's Long-Arm Statute

Ohio's Long-Arm Statute provides, in relevant part:

(A)  A court may exercise personal jurisdiction over a person who acts
     directly or by an agent as to a cause of action arising from the
     person's:

. . .

   (6)  Causing tortious injury in this state to any person by an act outside this
        state committed with the purpose of injuring persons, when he might
        reasonably have expected that some person would be injured thereby in
        this state.

Ohio Rev. Code § 2307.382(A). Defendants contend that O.R.C. § 2307.382(A)(6) does

not apply to Plaintiff's allegations because, under Sixth Circuit precedent, the presence

of an injured plaintiff is not enough to satisfy Ohio's long-arm statute; the defendant

must also have "minimum contacts" with Ohio. *Id.* (quoting *Reynolds v. Int'l Amateur

Athletic Federation*, 23 F.3d 1110 (6th Cir. 1994). But here, Defendants have the requisite

contact with Ohio. They distributed the Beasley Book in Ohio, they advertise legal

work in Ohio, and they litigate cases in Ohio. Accordingly, Plaintiff has satisfied his

burden of demonstrating the Defendants' "minimum contacts" with Ohio.

Furthermore, in similar copyright and trademark infringement cases, the Sixth

Circuit has held that the tortious injury of copyright infringement occurs in the state

where the injury is felt. *Bird v. Parsons,* 289 F.3d 865, 876 (6th Cir. 2002); *see also Stolle*

*Machinery Co., LLC v. RAM Precision Industries,* 605 F. App'x. 473, 480 (6th Cir. 2015). Construing Plaintiff's alleged facts as true, Defendants caused Plaintiff tortious injury when they infringed Plaintiff's copyright of the Helmer Treatise. Since Plaintiff resides in Ohio and felt the injury from infringement in Ohio, the long-arm statute, O.R.C. § 2307.382(A)(6), applies to Defendants.

### B. Due Process

Having established that Ohio's long-arm statute is satisfied, Plaintiff must next demonstrate that jurisdiction would comport with due process and not offend "traditional notions of fair play and substantial justice." *Int'l Shoe Co v. Washington*, 326 U.S. 310, 316 (1945). The Sixth Circuit has developed the following three-prong test to determine if a court's exercise of specific jurisdiction satisfies due process:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum . . . . Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant . . . must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir. 1968).

### (1) Purposeful Availment

The Sixth Circuit has found that the purposeful availment prong is satisfied if the defendant "has engaged in 'some overt actions connecting the defendant with the forum state.'" *Bridgeport Music, Inc. v. Still N The Water Pub.*, 327 F.3d 472, 478-79 (6th Cir. 2003) (citations omitted). In other words, a defendant purposefully avails itself when there is a "deliberate undertaking to do or cause an act or thing to be done in [Ohio]." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 891 (6th Cir. 2002). Here,

Defendants have done so in two ways.

### (a)    Interactive Internet Website

"A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state." *Id.* at 890.  There are three categories of interactivity for a website, commonly referred to as the "*Zippo* sliding scale" test. *See Zippo Mfg. Co. v. Zippo DOT Com,* 952 F.Supp. 1119 (W.D. Pa. 1997); *Cadle Co. v. Schlichtmann*, 123 Fed.Appx. 675, 678 (6th Cir. 2005) adopting the *Zippo* test).

The first category is a highly interactive website, which gives others the ability to download and enter into contracts.  *Int'l Unions, Sec. Police & Fire Professionals of Am. v. Maritas*, No. 19-10743, 2019 WL 3503073, at *4 (E.D. Mich. Aug. 1, 2019) (*citing CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996).  A highly interactive website is sufficient to establish the purposeful availment requirement and subject a defendant to personal jurisdiction.  *Id.*

The second category is "a middle ground where information can be exchanged between the viewer and the host computer.  In such a case, a court examines the level of interactivity and the commercial nature of the exchange of the information."  *Id.* (*quoting Zippo*, 952 F. Supp. at 1124).

The last category is where a defendant makes information available on an otherwise passive website.  *Id.* (citations omitted).  A "passive" website is one that simply provides information; customers cannot transact business (e.g., purchase products) on a passive website.  *Id.*  As such, a passive website is insufficient to

6

establish purposeful availment. *Id.*

Here, Defendants' website falls squarely into the second category of the *Zippo* scale. While there are portions of http://www.whistleblower-claim.com that are passive and merely provide information to users, the specific page titled "Ohio Whistleblower News" deliberately targets Ohio residents. The page contains relevant, Ohio-specific False Claims Act information and—more importantly— provides a form that (1) asks the visitor to fill out personal information and (2) invites them to "[c]ontact us today for a free legal consultation with an experienced attorney." This feature not only shows Defendants' willingness to conduct business with Ohioans, "an aspect that supports purposeful availment," but it also reveals their intention to provide Ohioans with their service in Ohio. *Neogen Corp.*, 282 F.3d at 890-91 (a website that invites business from the forum state and provides residents a platform for business satisfies the personal availment prong).

### (b) Stream of Commerce Plus Test

Jurisdiction is also independently proper under the "stream of commerce plus" test. It is undisputed that Defendants distributed, in total, about 100 copies of the Beasley Book to Ohio residents. But under the "stream of commerce plus" theory, for a defendant to purposefully avail himself of the privilege of acting within the forum state, he must do more than merely place a product into the stream of commerce. *Bridgeport Music, Inc. v. Still N The Water Publ'g,* 357 F.3d 472, 479 (6th Cir. 2003). Rather, Plaintiff must "direct" the product or work into the forum state to satisfy purposeful availment. *Id.* The Sixth Circuit has further held that advertising an infringing work directly in the

forum state is an example of purposeful direction of a product into the forum that satisfies the "plus" factor. *Bridgeport*, 357 F.3d at 481 (holding that evidence of advertisements directly targeting the forum state establishes the "plus" factor).

Here, Plaintiff has provided evidence of this plus factor. In addition to demonstrating that Defendants distributed roughly 100 copies of the Beasley Book to Ohio residents, Plaintiff has shown how Defendants directed the product specifically to Ohio. The Defendants mailed 78 physical copies to attorneys in Ohio. The Defendants sent brochures to Ohio residents advertising the book and specifically targeted Ohio residents through their websites. And, Defendants regularly litigate cases in Ohio. As such, Defendants did more than merely place the item in the stream of commerce. Given their direct targeting of the Beasley Book in Ohio and their continuous connections in the state, they have purposefully availed themselves of Ohio and could reasonably anticipate being haled there.

### (2) Arising from Contacts with Ohio

The second prong of the Due Process test requires that the cause of action arise from Defendants' contacts with Ohio. *Mohasco*, 401 F.2d at 381. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." *Id.* at 384 n.29. Plaintiff asserts that Defendants' distribution of over 100 copies of the Beasley Book in Ohio is more than "marginally related." While Defendants contend that they never "contracted to sell" the infringing material in Ohio, the Supreme Court has held that when looking to the "arising under" standard, the "proper question is 'whether the

defendant's conduct connects him to the forum in a meaningful way.'" *Walden v. Fiore*, 571 U.S. 277, 290 (2014) (quoting *Calder v. Jones*, 465 U.S. 783, 789 (1984). Here, Defendants shipped and provided downloadable copies of the Beasley Book to Ohio residents and mailed advertisements of the infringing material to Ohio residents. There is thus a meaningful connection between the Defendants conduct, the allegedly infringed Beasley Book, and the state of Ohio.

(3) **Reasonableness**

Finally, when analyzing the third prong, "an inference arises that [it] is satisfied if the first two requirements are met." *Bird v. Parsons,* 289 F.3d 865, 875 (6th Cir. 2002) (citing *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1268 (6th Cir. 1996)). Because the first two prongs are satisfied here, jurisdiction is reasonable. Moreover, the objections Defendants make as to the "reasonableness" prong hold little merit, especially when considering the number of cases they litigate in the Southern District of Ohio. Thus, Plaintiff has established a prima facie case that Defendants are subject to personal jurisdiction in this Court.

## II. Venue

Defendants also seek to dismiss the case for improper venue pursuant to Fed. R. Civ. P. 23(b)(3), or in the alternative, transfer the case to the Middle District of Alabama pursuant to 28 U.S.C. §§ 4106(a) or 1404(a). Since the Court has personal jurisdiction over Defendants and venue is proper, transfer is not required pursuant to 28 U.S.C. § 1406(a). Furthermore, the balance of public and private interests does not weigh in favor of disturbing Plaintiff's choice of venue for a § 1404(a) transfer.

9

**A. § 1406(a) Transfer of Venue**

Defendants contend that venue is improper in the Southern District of Ohio and thus the Court should "dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." § 1406(a). First, venue is proper in the Southern District of Ohio since it is where "a substantial part of the events . . . giving rise to the claim occurred." 28 U.S.C. § 1391(b)(2). As Plaintiff has established, the tortious injury resulting from the alleged infringement occurred in this district. Defendants also point to U.S.C. § 1400, which states that copyright suits "may be instituted in the district in which the defendant resides or may be found," and claim that they reside in Alabama. But courts have established that for purposes of this statute, both corporate and individual defendants "reside" in any state where they are subject to personal jurisdiction at the time the action is commenced. *J4 Promotions, Inc. v. Splash Dogs, LLC*, No. 08-cv-977, 2009 WL 385611, at *26 (N.D. Ohio Feb. 13, 2009) (citing *In re LimitNone, LLC,* No. 08-3499, 2008 WL 5264359 (7th Cir. Dec. 19, 2008)) (citing also *Walker v. Concoby*, 79 F. Supp.2d 827, 835 (N.D. Ohio 1999)). As the Court has personal jurisdiction over Defendants, for the purposes of the statute, Defendants "reside" in this district. Therefore, a transfer under § 1406(a) is not appropriate.

**B. § 1404(a) Transfer of Venue**

In the alternative, Defendants seek to transfer venue to the Middle District of Alabama for the convenience of the parties and witnesses and in the interest of justice, under 28 U.S.C. § 1404(a). Transfer under § 1404(a) turns on a two-pronged test: (1) whether the plaintiff could have brought the action in the transferee court; and (2)

10

whether, on balance, the considerations of the parties and the interests of justice favor transfer. *Kay v. Nat'l City Mortg. Co.*, 494 F. Supp. 2d 845, 849-850 (S.D. Ohio 2004) (citing *Jamhour v. Scottsdale Ins. Co.*, 211 F. Supp. 2d 941, 945 (S.D. Ohio 2002)). District courts have wide discretion when determining whether transfer is appropriate under § 1404(a). *Phelps v. McClellan*, 30 F.3d 658, 663 (6th Cir. 1994). A plaintiff's choice of venue, however, holds great weight and should only be disturbed upon a significant showing that the public and private interests at stake weigh in favor of transfer. *Shanehchian v. Macy's, Inc.*, 251 F.R.D. 287, 289 (S.D. Ohio Apr. 16, 2008). Defendants have not met that heavy burden to warrant transfer.

The first prong of the test is satisfied as Defendants reside in Montgomery, Alabama, which sits in the Middle District of Alabama, and the suit could have been brought there. On the second prong, however, Defendants fall short. Defendants contend that all relevant witnesses and records are in Alabama, and that travel to Ohio would be highly inconvenient for them, suggesting that private factors weigh entirely in favor of transfer. However, Plaintiff correctly points out that only Defendants' records and witnesses are in Alabama. Also, the Plaintiff is in Ohio, where he researched and published the Helmer Treatise. Defendant Gould has admitted that their business records are stored electronically and are thus as easily accessible in Ohio as they are in Alabama. Moreover, Gould and other attorneys from Beasley Allen have litigated federal lawsuits in this district several times before.

The witnesses, meanwhile, are Gould and current and former employees of Defendant Beasley Allen. One of these former employees does not even live in

11

Alabama but now lives in Washington, D.C.  Furthermore, courts have agreed that "upon a motion to change venue the convenience of the witnesses who are a party's employees will not ordinarily be considered, or at least, that the convenience of such employees will not generally be given the same consideration as is given other witnesses."  *Zimmer Enterprises, Inc. v. Atlandia Imports, Inc.*, 478 F. Supp. 2d 983, 991 (S.D. Ohio Mar 13, 2007).  Therefore, the location of Defendants' employee witnesses hold little weight, if any, in favor of transfer.  Considering the convenience of both parties, the private interests here are not significant enough to warrant disturbing Plaintiff's choice of venue.

The public interest factor also does not weigh in favor of transfer.  The only public interest factor in favor of transfer that Defendants point to is the smaller case load in the Middle District of Alabama compared to that of the Southern District of Ohio.  Considering the heavy burden the moving party must show to warrant a § 1404(a) transfer, this factor alone does not demonstrate a need to transfer in the interest of justice.  Therefore, transfer under § 1404(a) is inappropriate as neither the public nor private interest factors weigh in its favor.

## CONCLUSION

The Court finds that Defendants are subject to personal jurisdiction in Ohio and that venue is proper in the Southern District of Ohio.  Furthermore, the convenience of the parties and the interest of justice do not warrant a transfer of venue under U.S.C. § 1404(a).  Accordingly, Defendants' Motion (Doc. 7) is hereby **DENIED.**

12

**IT IS SO ORDERED.**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

By: _____

JUDGE MATTHEW W. McFARLAND